**MORGAN, LEWIS & BOCKIUS LLP**
Andrew J. Gallo
Amelia C. Joiner
Kathleen M. Ryan
One Federal Street
Boston, MA 02110-1726
Telephone:    (617) 341-7700
Facsimile:    (617) 341-7701

*Attorneys for Webster Bank, National Association*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS, EASTERN DIVISION

---------------------------------------------------------------- X
   In re:   :   Chapter 11
                                                        :
ABC DISPOSAL SERVICE, INC., *et al.*   :   Case No. 16-11787
                                                         :   (Jointly Administered)
                                  Debtors.   :
---------------------------------------------------------------- X

**OPPOSITION OF WEBSTER BANK, NATIONAL ASSOCIATION TO
THE DEBTORS' MOTION FOR ENTRY OF ORDER (1) AUTHORIZING
USE OF CASH COLLATERAL, (2) GRANTING REPLACEMENT
LIENS, (3) SCHEDULING A HEARING ON THE FURTHER USE OF
CASH COLLATERAL, AND (4) GRANTING OTHER RELIEF**

Webster Bank, National Association ("Webster"), in its capacity as administrative agent, files this opposition to the Debtors' *Motion for Entry of Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* [Dkt. No. 7] (the "Cash Collateral Motion"). In support of its objection, Webster respectfully states as follows:

**PRELIMINARY STATEMENT**

1.    The relief requested in the Cash Collateral Motion is premised on initial projections that show the Debtors' cash remaining stable over the first 13 weeks of these cases.

DB1/ 87776652.6

The Debtors' ability to meet these projections and to maintain positive cash flow beyond this 13-week period, however, remains to be seen. The initial projections cover the period of the year when the Debtors' revenues are at their peak, and yet their positive cash flow depends in large part on a one-time payment from the Commonwealth of Massachusetts. As these cases move into the fall, revenues will begin to drop, and the Debtors have not identified any additional large payments that will help maintain positive cash flow beyond the initial projections.

2. The initial projections themselves provide little margin for error. Relatively minor dips or delays in collections could result in significant declines in the Debtors' liquidity and the value of Webster's collateral. The narrow protections proposed in the Cash Collateral Motion are insufficient to ensure that Webster is adequately protected against a diminution in the value of its interests in the collateral.

3. Given these facts, the Court should: (i) grant Webster additional adequate protection liens; (ii) require that the Debtors maintain compliance with the budget (with a 10% ending cash variance); and (iii) impose certain case milestones to ensure that Webster is protected against unnecessary dissipation of the value of its collateral.

**RELEVANT FACTUAL BACKGROUND**

A. **Webster Loan Agreement**

4. On or about February 12, 2014, three of the debtors in these chapter 11 cases, ABC Disposal Service, Inc. ("ABC"), New Bedford Waste Services, LLC ("NBWS") and A&L Enterprises, LLC ("A&L", and together with ABC and NBWS, the "Borrowers"), entered into a loan agreement (as the same may have been amended, restated, supplemented, or otherwise modified to date, and collectively with all related loan and other documents identified therein, the "Webster Loan Agreement") with Webster and the lenders party thereto (collectively with

2

Webster, the "Lenders"). Webster is the administrative agent under the Webster Loan Agreement and, in that capacity, is authorized to take actions on behalf of the Lenders.

5. Pursuant to the Webster Loan Agreement, the Lenders provided to the Borrowers secured credit facilities, including: (i) a revolving loan up to $550,000; (ii) a term loan of $12,200,000; and (iii) staged term loan commitments of $13,450,000 (the amounts in (i) through (iii), collectively, the "Webster Loan"). As of the Petition Date, approximately $22,200,649 plus interest, fees and costs was outstanding under the Webster Loan Agreement.

6. Pursuant to a security agreement executed by the Borrowers and debtor Solid Waste Services, Inc. ("SWS") in favor of Webster, the Borrowers' obligations under the Webster Loan Agreement are secured by a security interest and liens (the "Prepetition Liens") on substantially all of the assets of the Borrowers and SWS, including, among other things, all accounts, deposit accounts, payment intangibles, general intangibles, inventory, machinery, fixtures, equipment, intellectual property and all proceeds of collateral (collectively, the "Prepetition Collateral").

7. Prior to the Petition Date, multiple events of default had occurred and were continuing under the Webster Loan Agreement. On April 5, 2016, Webster sent the Borrowers a notice of acceleration, pursuant to which Webster declared all of the Borrowers' obligations under the Webster Loan Agreement immediately due and payable and made a demand for payment.

**B.    Interim Cash Collateral Order & Budget**

8. On May 12, 2016, the Court entered an *Interim Order Regarding Motion for Entry of Order (1) Authorizing the Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief*

3

[Dkt. No. 24] (the "Interim Order"). The Interim Order provides for consensual use of Webster's cash collateral (the "Cash Collateral") through June 4, 2016 (the "Interim Period") in accordance with an agreed-to budget (the "Initial Budget").

9. While Webster consented to the Debtors' use of Cash Collateral during the Interim Period, it reserved its rights to contest any further use of Cash Collateral beyond such period.

10. On May 31, 2016, two hours before this objection was due, the Debtors filed a *Statement in Support of Final Order Authorizing Use of Cash Collateral* [Dkt. No. 60] (the "Cash Collateral Statement"), in which the Debtors requested, among other things, authority to use any insurance proceeds that constitute Cash Collateral to cover repair and remediation costs resulting from a fire that occurred on May 13, 2016 at one of the Debtors' properties.

11. Webster has engaged in discussions with the Debtors in an effort to reach agreement on the terms and conditions of a final order that would allow for consensual use of the Cash Collateral while adequately protecting Webster's interest in the Prepetition Collateral. To date, these discussions have not been successful.

## JURISDICTION & VENUE

12. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

## ARGUMENT

13. A debtor's ability to use a secured creditor's cash collateral is conditioned upon: (i) the secured creditor's consent, or (ii) a finding by a court that the creditor's interest in the

collateral is adequately protected. 11 U.S.C. §§ 363(c)(2), (e). The Bankruptcy Code does not define "adequate protection," instead providing three non-exclusive examples of relief that may ensure adequate protection, including: (i) cash payments; (ii) replacement liens; and/or (iii) the "indubitable equivalent" of a secured creditor's interest in the collateral sought to be used. 11 U.S.C. § 361. A debtor's proposal regarding adequate protection "should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *In re Hari Ram, Inc.*, 507 B.R. 114, 120 (Bankr. M.D.Pa. 2014) (quoting *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 435 (9th Cir. 1984) (internal quotations omitted).

14.     The Debtors must prove that Webster will be adequately protected before the Court may authorize their use of Cash Collateral. 11 U.S.C. § 363(p)(1); *In re Harrington & Richardson, Inc.,* 48 B.R. 431, 433 (Bankr. D.Mass. 1985) ("In any determination of adequate protection pursuant to §§ 361 and 363, the debtor has the burden of proof on the issue of adequate protection.") Here, the Debtors have failed to prove that the limited protections provided by the Interim Order are sufficient to adequately protect Webster's interest in the Prepetition Collateral.

A.     **Webster Should Receive Additional Adequate Protection Liens**

15.     The Debtors assert that Webster's interest in the Prepetition Collateral is adequately protected as long as: (i) it receives replacement liens (the "Replacement Liens") on the Prepetition Collateral and (ii) the Debtors continue to maintain their properties during the course of these chapter 11 cases. *See* Cash Collateral Motion, ¶¶ 53, 59-62. In support, the Debtors rely on the projections contained in the Initial Budget.

16.     The Initial Budget reveals that the Debtors' ability to meet their projections over the initial 13 weeks of these chapter 11 cases will hinge in large part on the timing of an

5

anticipated one-time payment from the Commonwealth of Massachusetts Department of Energy Resources (the "DOER"). During this period, the Debtors project an overall positive operating cash flow of $126,460.00 and an ending cash balance of $583,826.00. *See id.*, Exhibit A (Initial Budget). These numbers are driven by an anticipated $561,000 payment from DOER that appears in the Initial Budget during the week of 6/11 in the line item entitled "Other Cash Receipts" (the "DOER Payment"). *See id.*

17. Webster understands from documents received from the Debtors that the DOER Payment relates to amounts owed to the Debtors under a grant awarded by DOER. What is less clear, however, is the exact timing of this payment. The feasibility of the Initial Budget will be severely compromised if receipt of the DOER Payment is delayed. Without it, the Debtor's operating cash flow during the period covered by the Initial Budget will be *negative* $434,540, and their ending cash balance will be a mere $22,826. This during the period of the year in which the Debtors' allege that revenue is at its peak.

18. In addition, the Debtors most recent "budget to actual" analysis indicates that the Debtors' billed approximately $200,000 less than projected since the beginning of the case, resulting in a lower accounts receivable balance than projected. If the Debtors are not adequately replenishing their accounts receivable through ongoing business activities, collections in future weeks will be lower than anticipated, potentially resulting in even lower cash balances than projected in the Budget.

19. To provide Webster with adequate protection, the Debtors propose to grant Webster replacement liens on the same collateral it had liens on prior to the Petition Date. However, if the value of that collateral decreases due to the Debtors' business operations (i.e. if their projections are off) then such liens offer little protection.

20. In light of this uncertainty and to ensure that Webster's interest in the Prepetition Collateral is adequately protected, the Court should grant Webster additional adequate protection liens (the "<u>Additional Adequate Protection Liens</u>") on any of the Debtors' assets which are not subject to Webster's perfected Prepetition Liens. For example, the Debtors assert that certain of their vehicles were not subject to perfected liens as of the Petition Date. Webster should be granted adequate protection liens on these vehicles solely to the extent that the value of Webster's other collateral decreases due to Debtors' use of cash collateral.

21. Neither the Debtors nor other parties in interests will be harmed by the Additional Adequate Protection Liens, which would be recognized only to the extent of any post-petition diminution in value of the Prepetition Collateral. If the Debtors' projections are accurate and the value of Webster's collateral does not decline post-petition, then the Adequate Protection Liens will have no value. If, however, the Debtors' projections prove inaccurate and the value of Webster's collateral does decline, then Webster is entitled these additional liens as adequate protection.

**B.      The Court Should Not Give the Debtors Blanket Authority to Use Insurance Proceeds**

22. In the Cash Collateral Statement, the Debtors ask that the Court give them authority to use any insurance proceeds that may constitute Cash Collateral to "effectuate necessary repairs and remediation" resulting from the May 13, 2016 fire that occurred at one of the Debtor's properties. *See* Cash Collateral Statement, ¶¶ 4-5.

23. The Debtors' request is premature. The Debtors have yet to receive any insurance proceeds and have not presented any information as to what they intend to do with any insurance proceeds that are received. There is also no indication that there is any emergency or immediate need to perform these repairs. It is also not clear which Debtors' property was damaged and

7

which Debtor is entitled to receive the insurance proceeds.

24. The investigation into the fire is still on-going and until the Court and creditors receive additional information on the cause of the fire and the extent of the damage (including any official report issued by the state fire marshal or local fire department), the Debtors should not be given open-ended authority to spend insurance proceeds for "repair and remediation" that is neither described nor quantified in the Cash Collateral Statement. The Court and parties-in-interest should be given information that will allow them to evaluate the Debtors' newest request and respond appropriately.

C. **The Court Should Require Strict Compliance with the Budget Subject to a Ten Percent Cash Variance**

25. The Debtors' position on adequate protection is wholly dependent on the accuracy of their cash flow projections and the assertion that their cash balance will increase during the budget period. The Court should therefore require compliance with the Initial Budget (or any updated budget) and should condition the Debtors' authority to use Cash Collateral on the maintenance of a weekly "Ending Cash" balance that is within ten (10) percent of the "Ending Cash" balance reflected in the Initial Budget (or any updated budget) for that week. If Debtors' projections prove to be off, then the Debtors' ability to use cash collateral should stop, and the Debtors should be required to come back to Court to seek to continue to use cash collateral.

26. Additionally, Debtors use of cash collateral beyond the Initial Budget period must be based upon future budgets that also show sufficient cash cushion to protect Webster's position. Accordingly, the Court should only approve cash collateral use during the period of the proposed Budget, with future cash collateral use conditional on further court order.

27. Webster proposes that the final cash collateral order contain the following language regarding compliance with the budget and consent rights:

8

- "Subject to the terms and conditions of this Order, the Movants are authorized to use Cash Collateral strictly in accordance with the Budget attached hereto as **Exhibit A** solely for the period provided in the Budget; provided, however, that the Debtors' expenditures for any budget line item in the Budget may vary on a weekly basis so long as the Debtors' actual "Ending Cash" balance for each week is within ten (10) percent of the "Ending Cash" balance reflected in the Budget for that particular week. The Debtors' authority to use Cash Collateral beyond the initial 13-week term reflected in the Budget is subject to further order of the Court."

### D. The Court Should Impose Case Milestones to Ensure that the Value of the Prepetition Collateral is Not Dissipated

28. As noted above, the Debtors revenue is seasonally driven. *See* Camara Decl. ¶ 16, [Dkt. No. 12]; Cash Collateral Motion ¶ 14. The Court should impose certain case milestones on the Debtors to ensure that Webster's interest in the Prepetition Collateral is adequately protected in light of the Debtors' business model and seasonal revenue fluctuations.

29. The milestones proposed by Webster give the Debtors three months from the date that the bankruptcy was filed to attempt to refinance the Webster Loan. If the Debtors are unable to identify alternative sources of funding that will allow them to confirm a plan of reorganization, there should be a sale process in place by the end of the summer, when the Debtors' revenues will begin to drop. Even over the next few months—when the Debtors' revenue should be at its peak—the Debtors' ability to maintain a positive operating cash flow is dependent on the one-time payment from the DOER.

30. The milestones set out below are intended to correspond with the Debtors'

9

exclusivity period and reflect the financial reality of these chapter 11 cases. The Debtors assert that they have previously engaged in extensive efforts to obtain additional funding. *See* Camara Decl. ¶ 27. To the extent that a viable source of funding is available, the Debtors should not need more than the time allotted to obtain a binding commitment. Allowing the Debtors to linger in chapter 11 without any plan for moving these cases towards a timely exit will not adequately protect Webster's interest in the Prepetition Collateral and will increase the risk that these chapter 11 cases will ultimately end up as liquidations, rather than orderly sales of the businesses as a going concern.

31. Webster proposes that any final order entered by the Court include the following case milestones:

- On or before **August 15, 2016**, the Debtors shall provide the Lienholders and the Official Committee of Unsecured Creditors (the "Committee") with a binding commitment letter from a refinancing source of the Debtors agreeing to provide sufficient funds to repay the principal amount of the Webster Prepetition Loans and all other obligations owing in connection with the Webster Prepetition Loans in full in cash, and such commitment letter must be in form and substance satisfactory to Webster, (ii) if the Debtors have delivered the commitment letter referenced in the previous clause (a)(i), then on or before **September 5, 2016**, the Debtors shall file a motion seeking approval of a disclosure statement and confirmation of a plan of reorganization, both in form and substance satisfactory to Webster, which plan would result in the payment of all obligations owing in connection with the Webster Prepetition Loans in full and cash on the effective date of such plan, and (iii) if the Debtors have filed a motion for confirmation of the plan referenced in clause (a)(i), such plan shall be confirmed on or

before **December 31, 2016**;

- (b) (i) if the Debtors do not satisfy the conditions set forth in clause (a) above, then on or before **August 20, 2016**, the Debtors shall file a motion seeking authority to hire an investment bank to assist with the marketing and sale of all or substantially all of the Debtors' assets, (ii) on or before **September 30, 2016**, the Debtors shall have filed a motion for approval of a sale process, pursuant to which the Debtors will market all or substantially all of their assets for sale, and (iii) an order approving the sale of all or substantially all of the Debtors' assets shall be approved by the Bankruptcy Court on or before **January 6, 2017**.

**E.**     **Proposed Order**

32.     Attached as **Exhibit A** is a final cash collateral order proposed by Webster that includes language addressing the points in this objection. Attached as **Exhibit B** is a redline that compares the order Webster proposes to the Interim Cash Collateral Order entered in this case.

WHEREFORE, Webster requests that the Court (i) approve Cash Collateral use pursuant to the order attached hereto as Exhibit A; and (ii) grant such other and further relief as the Court deems appropriate.

Dated:  May 31, 2016
Boston, Massachusetts

**MORGAN, LEWIS & BOCKIUS LLP**

By:    /s/ Andrew J. Gallo

MORGAN, LEWIS & BOCKIUS LLP
Andrew J. Gallo
Amelia C. Joiner
Kathleen M. Ryan
One Federal Street
Boston, MA 02110-1726
Telephone:    (617) 341-7700
Facsimile:     (617) 341-7701

*Attorneys for Webster Bank, National Association*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 31, 2016, a copy of the foregoing *Opposition of Webster Bank, National Association to Debtors' Motion for Entry of Order (1) Authorizing Use of Cash Collateral, (2) Granting Replacement Liens, (3) Scheduling a Hearing on the Further Use of Cash Collateral, and (4) Granting Other Relief* was filed electronically and served by electronic service through the Court's CM/ECF system on all counsel of record who have appeared in this action and registered for service via CM/ECF.

By:  /s/ Andrew J. Gallo

DB1/ 87776652.6